## DEWEY & STONE V. W. E. WALTON.

[FILED MAY 6, 1891.]

**Judgment Liens:** ATTACH ONLY TO DEBTOR'S INTEREST. L.
F. E. and wife mortgaged one and a half acres of ground in
Nance county, to secure the payment of $75 to S. E., who sold
and assigned the mortgage to W. E. W., defendant in error. Sub-
sequently J. M. T., as administrator of L. F. E., deceased, the
mortgagor, under an order of the court, sold the two and a half
acres at public sale, subject to the mortgage, and reserving all
improvements, consisting of fences, posts, windmill, pump, coin
cribs, etc., to G. S. Y., and made an administrator's deed ac-
cordingly.  D. and S., the plaintiffs in error, recovered a judg-
ment in the district court against G. S. Y., levied execution
upon, and bought in the lot.  In an action by W. E. W. to fore-
close the mortgage, *held*, that by the purchase of the lot by D.
and S. at sheriff's sale they obtained no title nor lien to the
improvements which had been sold to W. E. W. by the rep-
resentatives of L. F. E., deceased, and had been removed prior
to the sale under the execution at law of D. and S.

ERROR to the district court for Nance county.  Tried
below before POST, J.

*M. V. Moudy*, for plaintiff in error, cited, in addition to
cases discussed in opinion: Jones, Mtges., sec. 722; *Park-
man v. Welch*, 19 Pick. [Mass.], 231 ; *Deuster v. McCamus*,
14 Wis., 333 ; *Kelley v. Whitney*, 45 Wis., 110; *Stevens v.
Cooper*, 1 Johns. Ch. [N. Y.], 425; *Guion v. Knapp*, 6 Paige
[N. Y.], 35; *Benton v. Nicoll*, 24 Minn., 221; *Warner v.
De Witt, etc., Bank*, 4 Bradw. [Ill.], 305 ; *Hall v. Edwards*,
43 Mich., 473 ; *McHugh v. Smiley*, 17 Neb., 623, and cases;
*McKeighan v. Hopkins*, 19 Neb., 39, and cases; *Tootle v.
White*, 4 Neb., 404; *Renard v. Brown*, 7 Id., 453-4-5; 3
Washb., Real Prop. [4th Ed.], 434.

*Reid & Morgan, contra,* cited cases referred to in opinion.

COBB, CH. J.

This action was originally brought by the defendant in error in the district court of Nance county to foreclose a mortgage of L. F. Ellis and Rebecca, his wife, to Samuel Ewing to secure a promissory note of $75, dated June 30, 1884, due in one year, with nine per cent interest, on "one and a half acres of ground, a part of the southwest quarter of section 13, township 17 north, range 4 west, commencing at eight chains two links west of the southeast corner of the northeast quarter of the southeast quarter of said section 13; thence running north 177 feet to a stake; thence west 344 feet to a stake; thence south 176½ feet parallel with the east line of Chestnut street of the original town of Genoa to a stake; thence east 344 feet to the place of beginning."

The note secured and the mortgage on this ground, were, on April 2, 1887, for valuable consideration, assigned and delivered to the defendant in error, and subsequently on October 30, 1885, George S. Young, of said county, bought the lot, subject to the mortgage, for the sum of $28.65, at the sale of J. M. Travis, administrator of the estate of L. F. Ellis, deceased, by authority of the district court of said county; the improvements on the lot, of fences, shedding, windmill, pump, and corn cribs, etc., being reserved and excepted from that sold and conveyed.

The plaintiffs in error, Charles H. Dewey and Emerson L. Stone, partners in trade as Dewey & Stone, answered in the court below, setting up that on September 30, 1884, they recovered a judgment in the district court of said county against George S. Young of $533.30, to satisfy which the lot was levied upon and sold to them at sheriff's sale, and deed made October 27, 1887. They charge the unlawful committing of waste and despoliation of the improvements and appurtenances against the plaintiff, for which they ask to be indemnified in $250.

The plaintiff below replied setting up that the improvements and appurtenances of the lot were reserved from the administrator's sale, and in the deed to Young, and that the plaintiffs in error took nothing but an equitable interest in the lot, subject to the prior mortgage.

There was a trial to the court, a jury being waived, and the cause was heard upon the petition, the answer of Dewey & Stone, the plaintiff's reply, and the evidence, and it was found that L. F. Ellis and Rebecca, his wife, executed a mortgage deed to Samuel Ewing for the premises described, which mortgage was duly recorded on July 11, 1884; that subsequently, on April 2, 1887, the mortgage and the note secured thereby were sold, assigned, and transferred to the plaintiff; that on October 30, 1885, George S. Young purchased the premises, taking a deed subject to the mortgage; that there is due the plaintiff upon the note $105.40, with interest at the rate of nine per cent from this date, December 5, 1888, and that the plaintiff is entitled to a foreclosure of the mortgage and a sale of the premises to pay the same.

The court further found that Dewey & Stone recovered a judgment against George S. Young, which is a lien on said premises, but is inferior to that of the plaintiff, and that there is due to Dewey & Stone thereon $——.

It was ordered that the defendants within twenty days from the entry of this decree, pay to the plaintiff $105.40, and the interest due thereon, and $9.93 costs hereon, or that the defendants' equity of redemption be foreclosed and said premises be sold by the sheriff as upon execution, and that he bring the proceeds into court to be applied in satisfaction of the sums found to be due, in the order of their priority, upon the confirmation of the sale.

The defendants' motion for a new trial was overruled, exceptions to the findings and judgment of the court were taken of record, and the cause brought to this court on the following errors:

1. The court erred in finding for the plaintiff on the issues joined.

2. In dismissing the counter-claim of defendants.

It appears from the record that one John Wiggins, and L. F.' Ellis, the mortgagor of the premises, were stock dealers in the town of Genoa, carrying on the business of feeding cattle and hogs for the market, and used the premises for that purpose. ' It is admitted that the lot was improved by hog-houses, corn cribs, cattle sheds, a substantial windmill with derrick, and the fencing and posts inclosing the lot, all of which were removed by the plaintiff prior to the sale of the lot on the sheriff's execution to defendants Dewey & Stone.

The plaintiff being examined as a witness on the trial, testified that, after the death of Ellis, in the last of the year 1885, or early in the year 1886, he succeeded Ellis in the elevator and hog buying business; that he became the owner of the improvements on the lot in question by buying the half interest of Wiggins (which Mrs. Ellis as the heir of her deceased husband admitted), and shortly after bought of Mrs. Ellis her interest in the other half, and was in possession of the premises under verbal agreement with G. S. Young, when the sheriff's levy was made of the execution against him, and removed the lumber and fixtures to his own home in the day time openly before the day of sale. This disposal of the fixtures, and the foreclosure of the original mortgage, left nothing of value for the last purchaser.

The plaintiffs in error now urge that when the defendant in error took the mortgage of assignment from the original mortgagee, he was bound to take notice of the character of the property specifically described and covered by the mortgage; and as the improvements were permanent, they became pledged with the land as security for the note of $75, with interest, to the extent of their value; and having removed the same has, in that degree, lessened

the security, and seeks to enforce the mortgage against the naked lot, which will leave nothing to be applied to subsequent liens. This, it is argued, is inequitable; that if their title could be cured by bidding the property in at foreclosure sale, protecting themselves in the right and title to the improvements on the lot, it becomes their right to do so, and the defendant in error ought not to be permitted, under the rules of equitable jurisprudence, to use any unfair means to defeat that right, and cites Jones on Mortgages, sec. 695, that " When fixtures are severed from the mortgaged property by the mortgagee without the consent of the mortgagor, in a state where the rule is that the title and right of possession remain in the mortgagor until foreclosure, the mortgagor may recover damages for the trespass committed by the person who removed the fixtures. The fact that the mortgage was afterwards foreclosed and the property bought by the mortgagee and conveyed to him by the sheriff, does not affect the case; because the fixtures having been removed, they are freed from the operation of the mortgage, and the foreclosure does not affect them. The title to the fixtures was in the mortgagor at the time they were severed from the freehold, and he is entitled to recover their value." (*Hill v. Gwin,* 51 Cal., 47.)

The same rule prevails in cases where the defendant in execution commits waste during the time that he is entitled to redeem. The purchaser may, when he subsequently receives a deed from the sheriff, recover of the defendant for such waste. (Freeman on Ex., 1st Ed., sec. 349*a; Rich v. Baker,* 3 Den. [N. Y.], 79.) And "Analogous to the cases above cited, it has been decided that as between the original parties the release of a part of the premises does not affect the mortgagee's lien upon the residue. This is bound for the whole debt. But as against others who have liens upon portions of the mortgaged premises, a mortgagee with notice of such liens has no right to release any portion of

the mortgaged premises to the injury of the owners of such liens." (Jones on Mortgages, sec. 722, and cases there cited.)

Numerous other authorities are presented in the brief and will be found in the reporter's citations to this case. The counsel's very ingenious argument lacks no element of research for authority and precedent. It is not doubted that each of these is consistent with its stated condition, and all are of authority in like cases. But it is not believed that any of the examples cited are analogous to the case at bar, or that the similarity and conditions of any bear a sufficient resemblance to warrant it as a guide to be followed.

The plaintiffs in error can claim no other title or interest in the property in question than that of the sheriff's sale. The sheriff could sell no other estate or interest than that of the judgment debtor at the date of the judgment. That interest was public and notorious by a deed duly recorded August 25, 1887, granting him the lot of "one and one-half acres, more or less, reserving therefrom all improvements and appurtenances thereon, and subject to a certain mortgage lien thereon." This was sixty-two days' notice to the purchaser prior to the confirmation of the sheriff's sale.

It is the rule of law in this state that a judgment lien attached only to the actual interest of the debtor, and it was held at the April term, 1878, in the case of *Galway v. Malchow*, reported in 7 Neb., 285, that "the lien of a judgment does not exceed the actual interest which the judgment debtor had in the land at the time it was rendered, and it is subject to every equity existing against the debtor at the time of its rendition." This rule has been affirmed and reaffirmed in the decisions rendered in *Dorsey v. Hall*, 7 Neb., 465; *Berkley v. Lamb*, 8 Id., 399; *Mansfield v. Gregory*, 11 Id., 298; *Leonard v. White Cloud Ferry Co.*, Id., 340.

Under this rule the plaintiffs in error could take noth-

ing in this case unless fraud and collusion be shown be-tween the mortgage creditor and the judgment debtor to make away with the appurtenances and trade fixtures of the lot and embezzle the proceeds.   There was an attempt, on the cross-examination of the plaintiff below, at the trial, to create that inference, but the witness answered consistently and without evasion against such presumption, and no fraud was discovered.

All the transactions relating to the sale and possession of the trade fixtures, and the deed of the lot to Young, were public and definite to all concerned, so far as the rec-ord in this case shows, and there is nothing before us to indicate that there was any concealment, collusion, or fraud on the part of any of those interested to prejudice the rights of the plaintiffs in error.

The assignments of error are overruled, and the decree of the district court is

AFFIRMED.

THE other judges concur.